## THOMASSON v. BUMPASS et al.

(Circuit Court, E. D. Virginia. April 8, 1896.)

PATENTS—INVENTION AND INFRINGEMENT—CHICKEN COOPS.

    The Thomasson patent, No. 444,561, for improvements in chicken coops designed for shipping purposes, shows no patentable novelty, except in the form of the woven slatted mat, constituting the bottom of the coop, and is therefore not infringed by a coop in which this bottom is not used.

This was a suit in equity by R. G. Thomasson against C. W. Bumpass and others for alleged infringement of letters patent No. 444,561, for improvements in chicken coops.

On the 13th of January, R. G. Thomasson obtained from the patent office at Washington a patent for "certain new and useful improvements on chicken or poultry coops, more especially designed for shipping purposes, combining strength and durability, and easily and cheaply constructed." The specifications and claim are set out in his application substantially as follows:

"I form the bottom, with its upturned side and end portions, respectively, of longitudinal and transverse thin, narrow strips or laths, preferably of ash or other pliable, readily-bent wood. These strips are interlaced after the fashion of wicker or basket work, the transverse strips thereof being preferably arranged two together side by side. This renders the bottom more solid, lessening interstices wherein the feet or legs of the fowl are liable to be caught, and whereby the number of longitudinal strips used is greatly reduced or lessened. Along the center and side edges of the thus interwoven or interlaced bottom part, both upon the upper and lower surfaces thereof, are nailed or fastened re-enforcing pieces or slats. These do not, however, extend along or up the end portions. The transverse strips are extended or continued beyond the side edge slats or pieces, and interwoven or interlaced with short longitudinal strips to constitute or form the side portions. The short transverse strips, forming, with the long longitudinal strips of the bottom, the end portions, are not interwoven with or extensions of the longitudinal strips of the side portions. Therefore, as the said side and end portions are bent up and caused to meet at their corner edges, their connection can be and is effected in part by means of short (otherwise waste) pieces or strips, suitably bent around said corner edges and fastened, preferably by nails, to the upturned portions of the transverse end strips of the bottom. The ends of the short pieces are tucked under other upturned longitudinal strips of the side portions and under upturned longitudinal strips of the end portions, thus being firmly held in place. By this arrangement the employment of long or usual-sized end strips, heretofore interwoven or interlaced with the side strips, are dispensed with. The top edges of the end and side portions are each sandwiched between, and have fastened or nailed to them, opposite strips respectively. The top edge pieces are just the length of the side portions; but the top edge pieces extend a short distance beyond the

end portions, and lap and are secured by nails, preferably, to both sides of the aforesaid top edge pieces. Pieces or strips of metal, preferably hoop iron, are applied to the side portions near the corners, the upper ends of such metal pieces or strips overlapping the top edges of the strips where they lap the strips, and secured thereto, while the lower ends of said metal strips underlap and are secured to the underneath side bottom pieces. Bows are secured to the side portions at the ends thereof, and at suitable intervals along the same, between the opposite top edge pieces or strips by nails or otherwise. These bows have secured to them upon their top surfaces longitudinal connecting and staying pieces or braces, while the end bows are themselves secured about at the center to the upper ends of upright pieces or stays. Metal strips, preferably hoop iron, are also used for strengthening or reenforcing, and secured to the end uprights or stays and to the end portions and to the top and bottom central pieces or braces, along which pieces they may be extended, if desired, their entire length. The bows, with their connecting pieces or braces, are covered with a firm wire netting, secured to the top edge pieces of the side and end portions of the coop in any suitable way. In this netting or cover is an opening, through which convenient access is had to the coop, closed by a door formed of a strong wire frame, itself covered by a wire netting, and hinged to the central brace or piece of the bows; said door having a bent, looped, wire fastening, engaging a side brace or piece of said bows, and securing the door in a closed position.

"What I claim is: (1) The chicken coop or crate comprising the bottom having the side and end projecting portions, forming the upturned portions or sides and ends of the coop connected together by the short tucked-in pieces or strips, and the inner and outer opposite strips or pieces lapping and secured to the top edge strips of the sides, and suitably re-enforced thereat, substantially as for the purpose set forth. (2) The chicken coop, consisting of the bottom wickerwork portion, having side and end portions held together as described, and having upper and lower bottom re-enforcing pieces or strips; also re-enforcing metallic pieces or strips near their corner edges; the wire netting covered bows with their braces or stays, and bows being secured to said bottom portion; the upright stays or braces secured to said bottom portion, and the end bows and the re-enforcing metal pieces secured to said upright stays and to said bottom portion, and to the central top brace of said bows and the central underneath strip or brace of said bottom portion, substantially as set forth."

Stiles & Holladay, J. G. May, and F. W. Sims, for complainant.

A. B. Guigon and J. Adair Plesants, for defendants.

HUGHES, District Judge (after stating the facts). It is impracticable for me to attach to this decision the diagrams referred to in these specifications and claim. Applications for patents ought to be so clearly and unambiguously defined by the language used for the purpose that the general public, who have a right to invent and use other contrivances, and who cannot see the diagrams, may understand the patent from the literal terms employed in defining it. I think the language of the application which is above set forth is somewhat intricate, inaccurate, and misleading in the terms employed; and to the general reader, who does not see the diagrams, is difficult of comprehension. This much, however, seems plain, namely: The basis of this invention is the peculiar manner of making the mat which forms the wicker bottom of the coop or crate. This mat is made of ordinary slats rived from ash or other flexible wood, woven, two slats side by side, running crosswise, platted with slats, one at a time, running lengthwise; thus forming the mat. The mat is made wide enough and long enough not only to form the bottom of the crate, but to form also, when turned

up at its sides and ends, the lower parts of its sides. These latter, after being so turned up respectively, form, when suitably fastened together and braced, the cubical basket, on which the upper part of the coop is built. On each side of the bottom and in its middle is a stiff slat running longitudinally; and at each end, and at proper intervals between them, are stiff transverse slats running across the bottom. Upon these stiff strips on each side and end of the bottom, the sides and ends of the mat are turned up respectively at right angles to form the basket, which, thus formed, constitutes the structure on which the upper bows and wire of the coop and their bracings are built. No point is made by the defense against the imperfect description of the plaintiff's invention made in his application. The patent was granted; and this action of the patent office, though not conclusive upon the courts, is, if not contested, presumed to have been taken on proper and sufficient grounds. It is therefore a concession in this case that the mat which has been described, and the basket structure formed from it, were patentable, as to the form and special use intended for it, and must be respected as the plaintiff's patented invention as to such form and use. It may also be conceded that the upper gearing built on this structure, so far as any of its parts are novel, and had not been in previous use, and were necessarily incidental to the whole, was patentable as to these novel and incidental features, and must be respected as the inventor's property.

The question in this case is whether or not the invention of the plaintiff, thus described and limited, is infrnged by the coop which is manufactured by the defendant. This is a coop with a wicker bottom, made independently of the rest of the structure, and detachable at will. It is fitted to the frame of the coop and fastened to and unfastened from it by proper catches and appliances. This detachable feature is a very valuable improvement. The bottom of the frame of this coop of defendant is made of sawed wooden boards, about four inches wide. Upon the bottom of the frame of this coop thus formed of boards are built the bows, wire netting, and their braces, very much as shipping poultry coops are generally made. The use of wire netting in covering the two coops of these two contestants, whether galvanized or not, has been common for years. The use of basket work of interwoven slats for this purpose is as old as carrying chickens to market in baskets. The bow which is used as the handle of the basket, and the cover of stout cloth or netting of some sort, fibrous or metallic, is old; and the adding of two or more bows would hardly seem patentable. I see nothing that is patentable in the plaintiff's invention but the mat as made and used in his coop. Whatever additional he has invented and applies in constructing the parts of his coop built on his mat, that is specially adapted to the use he makes of it, and which was not in common use before, is also patentable quoad, and only quoad, the use he makes of it in connection with the mat. But, as the defendant makes no use of the peculiar mat of the plaintiff, his use of bows, wire netting, braces, and other appliances in connection with his own coop, and not with the defendant's mat,

he does not infringe the patent. I see nothing patentable in the plaintiff's invention except his mat, and, for reasons stated, the defendant's coop does not infringe the mat, or the appliances peculiarly adapted to the completion of the coop from the mat. I will sign a decree for the defendant.